NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEFFREY B., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil Action No. 24-1812 (RK) <br><br> **OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court on Jeffrey B.'s[1] ("Jeffrey" or "Plaintiff") appeal from the Commissioner of the Social Security Administration's (the "Commissioner") final decision, which denied Jeffrey's request for disability insurance benefits. (ECF No. 1.) The Court has jurisdiction to review this appeal under 42 U.S.C. § 405(g) and reaches its decision without oral argument under Local Civil Rule 78.1. For the reasons below, the Court **AFFIRMS** the Commissioner's decision.

I. **BACKGROUND**

In this appeal, the Court must answer the following question: Does substantial evidence support Administrative Law Judge Trina Moore's ("Judge Moore") determination at Step Four that Jeffrey could perform his past work and was therefore not disabled?

A. **PROCEDURAL POSTURE**

Jeffrey filed an application for a period of disability and disability insurance benefits on

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

July 22, 2019, alleging an onset date of July 1, 2019. (Administrative Record ("AR") at 70, 193.)[2] Jeffrey, at the time of the subject application, was 63 years old. (*Id.*) The Social Security Administration (the "Administration") denied these requests both initially (*id.* at 85–90) and on reconsideration, (*id.* at 94–96). Thereafter, Jeffrey requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 97–98.) On December 14, 2022, Judge Moore, as the ALJ, held a virtual hearing. (*See id.* at 33–56.) Judge Moore and Jeffrey's counsel each elicited testimony under oath from both Jeffrey and Patricia Highcove, a Vocational Expert ("VE"). (*See id.*) Judge Moore then issued a written decision, finding that Jeffrey was not disabled. (*Id.* at 14–27.) The Administration's Appeals Council denied Jeffrey's request to review Judge Moore's decision, finding "no reason under our rules to review the [ALJ's] decision." (*Id.* at 1–5.) This appeal followed. (ECF No. 1.) The Record was filed on the docket on May 2, 2024, (ECF No. 4), after which Jeffrey filed his moving brief (ECF No. 9), and the Commissioner filed an opposition brief (ECF No. 13). Jeffrey did not file a reply brief.[3]

## B.    JUDGE MOORE'S DECISION

In her January 10, 2023 decision, Judge Moore held that Jeffrey was not disabled under the prevailing Administration regulations. (*See generally* AR at 14–27.) To reach this decision, Judge Moore analyzed Jeffrey's application under the five-step process for determining whether an individual is disabled, as set forth in 20 C.F.R. § 404.1520(a). At Step One, Judge Moore found that Jeffrey had not engaged in substantial gainful activity during the period from his alleged onset

---

[2] The Administrative Record ("Record" or "AR") is available at ECF Nos. 4-1 through 4-7. This Opinion will reference only page numbers in the Record without the corresponding ECF numbers.

[3] Rule 8 of the "Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g)" allows a plaintiff to "file a reply brief and serve it on the Commissioner within 14 days after the service of the Commissioner's brief." Since the Commissioner filed the opposition brief on November 8, 2024, Jeffrey's time to file a reply expired on November 23, 2024.

date of July 1, 2019 through his date last insured of June 30, 2022. (*Id.* at 19–20 (citing 20 C.F.R. §§ 404.1571 *et seq.*).) At Step Two, Judge Moore found Jeffrey suffered from several severe impairments, including degenerative disc disease, diabetes mellitus, peripheral neuropathy, and chronic pain syndrome. (*Id.* at 20–21 (citing 20 C.F.R. § 404.1520(c)).) At Step Three, Judge Moore determined that Jeffrey did not have an "impairment or combination of impairments" that qualified under the Administration's listed impairments. (*Id.* at 21–23 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).) As a precursor to Step Four, Judge Moore concluded that Jeffrey had the residual functional capacity ("RFC") to perform "light work," *see* 20 C.F.R. § 404.1567(b), but that any job he performed must be limited in specified ways:

> [H]e can only stand/walk for 3 hours and sit for 6 hours in an 8-hour workday; can only occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds; can only occasionally stoop and crouch, but never balance, kneel, or crawl; must avoid concentrated exposure to extreme temperatures, wetness and humidity; and must avoid all exposure to pulmonary irritants and hazards, such as unprotected heights and moving mechanical parts.

(AR at 26.) At Step Four, Judge Moore concluded that Jeffrey was capable of performing past relevant work as a business representative and that such related work did not require the performance of work-related activities precluded by his RFC. (*Id.* at 26 (citing 20 C.F.R. § 404.1565).) Having decided at Step Four that Jeffrey was not disabled, Judge Moore did not make any finding at Step 5. *See* 20 C.F.R. § 404.1520(a)(4)(v); *id.* § 404.1520(a)(4)(iv) ("If you can still do your past relevant work, we will find that you are not disabled.").

This appeal concerns Judge Moore's determination as a precursor to Step Four that Jeffrey had the RFC to perform light work with additional limitations.[4] (*See* ECF No. 9 ("Pl. Br.") at 6.)

---

[4] Jeffrey does not challenge the ALJ's findings as to Steps One through Three, and the ALJ made no determination as to Step Five. (*See* ECF No. 9 at 6.) As this Appeal concerns only Judge Moore's RFC determination, the Court summarizes in greater detail this aspect of Judge Moore's decision.

3

In determining Jeffrey's RFC, Judge Moore considered Plaintiff's symptoms as well as "medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of" 20 C.F.R. § 404.1520(c). (AR at 23.) First, Judge Moore recounted that Jeffrey alleged "neuropathy, diabetes, arthritis in his hands, kidney stones, high cholesterol, acid reflux, problems swallowing, a stent in his heart, arterial basement movement dystrophy, two crushed discs in his back[,] and anxiety." (*Id.* at 24 (citing *id.* at 229).) Judge Moore also explained that Plaintiff testified that "he stopped working on the alleged onset date because he was having difficulty standing and sitting due to daily back pain, which was radiating down his legs." (*Id.* at 24; *see id.* at 41–42.)

Judge Moore then proceeded to review medical information from some of Jeffrey's treating physicians. (*Id.* at 24.) Judge Moore first analyzed treatment records from Manhattan Total Health, which noted that Jeffrey had participated in physical therapy for degenerative disc disease prior to his onset date. (*Id.* at 24 (citing *id.* at 320).) Next, Judge Moore examined records from Jeffrey's 2019 visits with Dr. Stephen Kulick, a neurologist, which occurred because Jeffrey had been experiencing "increased sensitivity of the skin." (*Id.* at 25 (citing *id.* at 472).) Dr. Kulick, according to Judge Moore's recitation, examined Jeffrey and noticed "normal tone, power, and coordination in the upper and lower extremities and a normal gait with normal Romberg testing." (*Id.* at 25.) A November 2019 MRI revealed disc herniations and compressions and disc bulges, and an EMG showed left lumbar radiculopathy. (*Id.* at 25 (citing *id.* at 478–82).) Dr. Kulick suggested "conservative therapy consisting of physical therapy, acupuncture, use of a stationary bike and swimming." (*Id.* at 25 (citing *id.* at 471).) Judge Moore noted that there was "no evidence that [Jeffrey] participated in the [therapies]. In fact, there is no evidence that he sought or received treatment for his complaints of back pain after his November [2019] visit." (*Id.* at 25.) Finally,

Judge Moore reviewed records from Jeffrey's endocrinologist, who treated Jeffrey for management of his diabetes with neuropathy prior to the alleged onset date. (*Id.* at 25 (citing *id.* at 415–31).) Judge Moore again found "no evidence that [Jeffrey] sought or received anything other than routine and conservative treatment for his diabetes and neuropathy" and further noted "no evidence of any inpatient hospitalizations, amputations, or extensive treatment for these conditions." (*Id.* at 25.)

Judge Moore also reviewed records and opinions from three state agency consultants: Dr. Francky Merlin, Dr. James Paolino, and Dr. Nancy Simpkins. (*Id.*) In December 2019, Jeffrey underwent a consultative examination with Dr. Merlin, and, according to Judge Moore's recitation, denied symptoms of diabetes and hypertension despite reporting a history of the same. (*Id.* (citing *id.* at 501).) Again, the doctor showed that his "gait and station were normal, and he had no difficulty getting on/off the examining table." (*Id.* at 25 (citing *id.* at 502.) Dr. Merlin also identified "tenderness . . . in the lumbar region and decreased response . . . to light touch, pinprick and vibration in the left foot." (*Id.* at 25.) Dr. Paolino "opined that claimant is capable of light duty work, except he can only stand/walk for 3 hours and is subject to postural and environmental limitations." (*Id.* (citing *id.* at 66–67).) Dr. Simpkins, on Jeffrey's request for reconsideration, "affirmed Dr. Paolino's opinion." (*Id.* at 25 (citing *id.* at 79–81).)

In making an RFC determination, Judge Moore evaluated the persuasiveness of statements from Jeffrey and his wife, as well as Drs. Paolino and Simpkins. (*Id.*) She found Plaintiff's "statements concerning the intensity, persistency and limiting effects of [his] symptom [] not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 24.) She found the statement from Jeffrey's wife "not persuasive, as it is a lay opinion based upon casual observation rather than objective medical examination and testing. Further, it is potentially

5

influenced by loyalties to family." (*Id.*) Judge Moore further explained that Jeffrey's wife's statement "does not outweigh the accumulated medical evidence regarding the extent to which [Plaintiff]'s impairments limit his functional abilities." (*Id.*) As for Dr. Merlin, Judge Moore noted that Dr. Merlin "did not provide an opinion regarding the claimant's functional capacity," but Judge Moore still "considered her findings in rendering this decision." (*Id.* at 25.) Judge Moore found the opinions of both Dr. Paolino and Dr. Simpkins "persuasive, as they are consistent with the evidence of record, which supports a finding of severe impairments, but limited and only conservative treatment of the same." (*Id.*)

Ultimately, Judge Moore concluded that "claimant's statements that he is unable to work are not supported and are not consistent in light of the discrepancies between the claimant's assertions, testimony, and medical record. (*Id.* at 25–26.) Judge Moore then decided Jeffrey's RFC, and concluded that "[t]he claimant has a lot of complaints, but there is little objective evidence to support those complaints." The RFC itself parallelled what both Dr. Paolino and Dr. Simpkins recommended in their medical opinions, with no changes. (*See id.* at 66–67, 79–81.)

II.  **LEGAL STANDARD**

   A.  **STANDARD OF REVIEW**

The Court reviews the "final decision of the Commissioner of Social Security" to determine whether the Commissioner's findings are "supported by substantial evidence." 42 U.S.C. § 405(g). In the event that the Appeals Council denies a claimant's request for review, "the ALJ's decision is the Commissioner's final decision." *Matthews v. Apfel,* 239 F.3d 589, 592 (3d Cir. 2001). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Zirnsak v. Colvin,* 777 F.3d 607, 610 (3d Cir. 2014) (quoting *Rutherford v. Barnhart,* 399 F.3d 546, 552 (3d Cir. 2005)). Put differently, "[i]t means such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). This evidentiary threshold "is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

The scope of the Court's review of the ALJ's decision is "quite limited." *Rutherford*, 399 F.3d at 552. On review, the Court may not "re-weigh the evidence or impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). "Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001). The court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak*, 777 F.3d at 610 (citing *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706–07 (3d Cir. 1981) (citation omitted).

### B.   ESTABLISHING ELIGIBILITY FOR DISABILITY INSURANCE BENEFITS

A claimant may establish disability under the Social Security Act by proving they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ applies a well-established "five-step sequential evaluation process," which requires considering whether the claimant:

> (1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is "severe"; (3)

7

>suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or her past relevant work; and (5) is able to perform work existing in significant numbers in the national economy.

*McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f)). The claimant bears the burden at the first four steps, at which point it shifts to the Commissioner at Step Five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019).

## III. DISCUSSION

Jeffrey contends that Judge Moore erred in crafting his RFC because it is not supported by substantial evidence. (*See id.* at 6.) In the "Summary of Argument" section his brief, Jeffrey previews four arguments: *first*, that Judge Moore arrived at the decisional RFC without "evidentiary rationale;" *second*, that the RFC "ignores the Commissioner's mandated functional analysis;" *third*, that the decision "issues contradictory findings and medical improbabilities without rhyme or reason;" and *fourth*, that it "selects an exertional category without definition or a single finding that would fit the Commissioner's definition." (*Id.*) The contours of each of these contentions are not quite clear throughout the brief, and the Court therefore addresses each of Jeffrey's arguments as it understands them. *See Padgett v. Comm'r of Soc. Sec.*, No. 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("The Court does not assemble arguments for a party from fragments.").

### A. EVIDENTIARY RATIONALE

Jeffrey's primary contention with Judge Moore's decision appears to be the way she *explained* her reliance on various medical evidence, not whether she should or should not have relied on the medical opinions in the first instance. Indeed, Plaintiff makes no reference to any medical evidence or opinion that should have been given more or less weight than it was given

8

and does not cite to any document in the record outside of the ALJ's decision, the hearing transcript, and communications from the Appeals Council. The Court therefore begins by reviewing Judge Moore's analysis, and the steps she took to arrive at her RFC determination.

An ALJ is not required "to use particular language or adhere to a particular format in conducting [her] analysis" but must "ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). Furthermore, the Court needs from an ALJ "not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705.

An ALJ's finding of a claimant's RFC must "be accompanied by a clear and satisfactory explication of the basis on which it rests." *Fargnoli*, 247 F.3d at 41. However, the Court "examine[s] the ALJ's conclusions as to a claimant's RFC with 'the deference required of the substantial evidence standard of review.'" *Martin v. Comm'r of Soc. Sec.*, 547 F. App'x 153, 160 (3d Cir. 2013) (quoting *Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002)). Substantial evidence does not require highly detailed explanations, "[t]o the contrary, a reviewing court must 'uphold' even 'a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Garland v. Ming Dai*, 593 U.S. 357, 369 (2021); *see also Cotter*, 650 F.2d at 482 ("[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice.")

Jeffrey contends that Judge Moore "play[ed] doctor" in her RFC decision, (Pl. Br. at 10), but the ALJ opinion itself belies that contention. Importantly, "[t]he ALJ—not treating or examining physicians or state agency consultants—must make the ultimate disability and RFC

determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d at 361. Judge Moore's decision includes an overview of relevant of medical records, sharply contrasted with Jeffrey's own testimony, relating to Jeffrey's severe impairments of degenerative disc disease, diabetes, peripheral neuropathy and chronic pain syndrome. (AR at 23–26.)

First, Judge Moore determined that although Jeffrey's medical records substantiated his claims of degenerative disc disease, seemingly, he ignored and never engaged in any of the suggested treatments, and stopped complaining of symptoms after November 2019. (*See* AR at 24–25.) In arriving at this conclusion, Judge Moore first relied on medical records, which confirmed Jeffrey's degenerative disc disease. (*Id.* at 24 (citing Ex. 1F).) She also assessed neurology medical records, and highlighted that, upon examination, it appeared that Jeffrey was suffering from lumbar radiculopathy and polyneuropathy, which caused his symptoms. (*Id.* at 25 (citing Ex. 6F at 8).) MRI records showed disc herniations, and an EMG showed left lumbar radiculopathy. (*Id.* (citing Ex. 6F at 14–19).) To help contend with the pain caused by the various degenerative disc conditions, Jeffrey's neurologist suggested "conservative therapy, acupuncture, use of a stationary bike and swimming." (*Id.* (citing Ex. 6F at 7).) Judge Moore reviewed the voluminous medical record, however, and found "no evidence that [Jeffrey] sought or received treatment for his complaints of back pain after his November [2019] visit." (*Id.*)

Second, Judge Moore noted Jeffrey's history of "diabetes with neuropathy," and noted that he was seeing an endocrinologist to manage his condition. (*Id.* (citing Exs. 1F; 2F at 13; 3F).) Judge Moore also reviewed and referenced his hemoglobin A1C, which was 7.0 in May 2019 (*id.* at 408) and went down to 6.8 in January 2020 (*id.* at 524).[5] Here, too, Judge Moore concluded

---

[5] "For someone with known diabetes, a value [less than] 7% indicates that their diabetes is well controlled and a value greater than or equal to 7% indicates suboptimal control." (AR at 524.)

that Jeffrey's treatment plan was not consistent with continued complaints of impairment. She found "no evidence that [Jeffrey] sought or received anything other than routine and conservative treatment for his diabetes and neuropathy. There is no evidence of any inpatient hospitalizations, amputations or extensive treatment for these conditions." (*Id.* at 25.)

Importantly, the medical records and evidence that Judge Moore considered from the treating physicians—like the neurologist and endocrinologist—are not "medical opinions," according to the governing regulations. A "medical opinion" is "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in a variety of abilities. 20 C.F.R. § 404.1513(a)(2). An ALJ is required to evaluate the persuasiveness of every medical opinion based on five factors. *Id.* § 404.1520c(c). But this requirement does not apply to medical evidence—such as medical records and treatment notes—that are not medical opinions. *See id.* § 404.1513(a)(1), (3). Plaintiff does not argue that Judge Moore should have evaluated the persuasiveness of the hundreds of other pages of medical records, because those contained no opinions.

Judge Moore did, however, appropriately evaluate the persuasiveness of the only two pieces of evidence in the record that *did* contain medical opinions: the opinions of the non-treating state consultants. (*See* AR at 25.) Dr. James Paolino found that Jeffrey could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk for three hours, sit for a total of six hours, and do unlimited pushing and pulling. (*Id.* at 66.) Dr. Nancy Simpkins agreed with each of Dr. Paolino's recommendations. (*Id.* at 79–80.) Judge Moore explained that she found "these opinions persuasive, as they are consistent with the evidence of record." (*Id.* at 25.) Accordingly, Judge Moore's RFC determination reflected these medical opinions accurately.

11

Plaintiff argues that Judge Moore did not appropriately articulate why she made the RFC determination that she did. The Court disagrees. Judge Moore reviewed medical evidence and appropriately accounted for the persuasiveness of the two medical opinions. Judge Moore explained that she found that the evidence "fails to substantiate [Jeffrey's] allegations of debilitating limitations" and that therefore a "light work" RFC was warranted. (*Id.* at 25.) Judge Moore added that "the claimant has a lot of complaints, but there is little objective evidence to support those complaints." (*Id.*) Plaintiff does not argue that Judge Moore's determination is contrary to any treatment records or other medical findings; instead Judge Moore's findings are consistent with the record.

Based on the above, the Court finds that Judge Moore's determination was indeed supported by "substantial evidence." *Rutherford*, 399 F. 3d at 552. Although Judge Moore did not cite every single piece of medical evidence in her decision, and did not, by name, discuss every doctor that Jeffrey saw for treatment of his various ailments, the decision RFC is certainly not "bereft of evidentiary support or any claim of such support," as Plaintiff contends. (*See* Pl. Br. at 12.) "An ALJ is not required to mention any particular medical assessment by name, or to even consider every piece of record evidence." *Demaio v. Berryhill*, No. 15-5187, 2017 WL 4618749, at *4 (D.N.J. Oct. 13, 2017) (citing *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203–04 (3d Cir. 2008)). While perhaps a more fulsome written analysis might have added support, Judge Moore's entire opinion enables this Court to discern her reasoning for why substantial evidence supports her RFC determination. *See Ming Dai,* 593 U.S. at 369 (the substantial evidence standard does not require highly detailed explanations, "[t]o the contrary, a reviewing court must 'uphold' even 'a decision of less than ideal clarity if the agency's path may reasonably be discerned'") (citation omitted).

### B.  JEFFREY'S RESIDUAL FUNCTIONAL CAPACITY

Jeffrey's next contention is with Judge Moore's articulation of his RFC, which Jeffrey calls "indecipherable." (Pl. Br. at 19.) The Court instead finds the RFC as stated to be clear and consistent. According to the prevailing regulations, "light work," involves, *inter alia*, "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Drs. Paolino and Simpkins opined that Jeffrey could occasionally lift 20 pounds and frequently lift 10 pounds—exactly what the regulation prescribes. (*See* AR at 66, 79.) Although Judge Moore did not specifically write these lifting requirements in her opinion, they are incorporated into the definition of "light work" based on the regulatory definition. *Hayes v. Apfel*, No. 98-649, 1998 WL 966074, at *5 (E.D. Pa. Oct. 22, 1998) (explaining that an ALJ need not define a term that was specifically defined by the Commissioner's regulations). Then, Judge Moore noted a series of exceptions to the light work requirement—physical limitations that applied to Jeffrey but were not otherwise included in the regulation. For example, Judge Moore's opinion states that Jeffrey "can only stand/walk for 3 hours and sit for 6 hours in an 8-hour workday." (AR at 26.) Again, this determination is consistent with the only medical opinions in the record. (*See id.* at 66, 79.) So, although Jeffrey correctly points out that, according to the relevant regulation, light work involves "a good deal of walking or standing," Judge Moore's determination appropriately creates a carve-out, replacing "good deal of walking or standing" with "stand/walk for 3 hours and sit for 6 hours." (*Id.* at 26.)

Jeffrey further argues that the RFC determination was internally inconsistent, relying on the interplay between Judge Moore's determination, the regulatory definition of "light work," and SSR 83-10 (defining the word "frequent," in this context, to mean "occurring from one-third

13

to two-thirds of the time"). To recap, Judge Moore assessed Jeffrey's RFC as "light work," which includes "*frequent* lifting or carrying of objects weighing up to 10 pounds." (AR at 26); *see* 20 C.F.R. § 404.1567(b) (emphasis added). Accordingly, "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours." SSR 83-10. However, despite the light work assessment, Judge Moore concluded that Jeffrey could only stand for three hours per day, not six. (*See* AR at 26.) Therefore, Jeffrey argues, the RFC determination is incomprehensible because it simultaneously assesses that Jeffrey can stand for six hours per day (as required to lift up to 10 pounds *frequently*), and that he can only stand for three hours per day (articulated as an exception to the light work finding). (Pl. Br. at 17–21.) Of course, one person cannot stand for six hours if he is limited to standing for three hours.

Jeffrey overlooks a nuance of SSR 83-10: frequent does not necessarily mean two-thirds of the time (*i.e.*, six hours). Instead, frequent means "occurring from *one-third to* two-thirds of the time." *See* SSR 83-10 (emphasis added). Since one-third of a workday is 2.67 hours, and Jeffrey can stand for three hours, there is no inconsistency in Judge Moore's RFC determination. "It is entirely possible for [Jeffrey] to lift and/or carry items for one-third of the day—meaning []he does so frequently—and remain within [his] [three]-hour stand and/or walk limitation." *Paiz v. Saul*, 2020 WL 3127945, at *5 (E.D. Pa. June 12, 2020) (dismissing an identical argument).

### C.    VOCATIONAL EXPERT QUESTIONING

Jeffrey also takes issue with the ALJ's questioning of the Vocational Expert ("VE") and subsequent incorporation of the VE's testimony into her written determination. Jeffrey characterizes the ALJ's questioning as "corner[ing] [the VE] into finding that plaintiff could perform very highly skilled light work activity on a sustained basis." (Pl. Br. at 14.) To the contrary, the Court does not find that the hearing questioning and testimony indicates and

predisposition or agenda. At the beginning of her questioning, Judge Moore asked the VE about a hypothetical situation wherein a claimant could perform light work with certain exceptions. (AR at 50.) The hypothetical posed mirrors the RFC ultimately included in Judge Moore's determination. (*Compare id.* at 50, *with id.* at 26.) The VE responded that such a hypothetical claimant could undertake "[p]ast work as a business representative as performed and defined. And the teacher, the vocational training teacher, as defined." (*Id.* at 50.) Here, the VE asserted that under the hypothetical RFC, a claimant in Jeffrey's exact position could complete his work as a business representative—which is what Judge Moore adopted in her Step Four analysis. (*See id.* at 26.)

Judge Moore then posed more hypothetical questions to the VE. For example, she asked about hypothetical claimant who could only perform sedentary work, as opposed to light work and "with the additional limitation frequently handling and fingering bilaterally and no constant operations of foot controls bilaterally." (*See id.* at 51.) The VE responded that such an individual could not perform any of Jeffrey's past work "*as performed*, but [could perform] the business rep *as defined*." (*Id.* (emphasis added.)) Jeffrey highlights this line of questioning as evidence that his RFC should really have been limited to sedentary work, instead of light work. (Pl. Br. at 14.) However, "just because a limitation is included in a hypothetical question does not mean that sufficient evidence exists, necessarily, to support it or that the ALJ will ultimately adopt it." *J.L.B. v. Comm'r of Soc. Sec.*, No. 20-7851, 2022 WL 17039305, at *9 (D.N.J. Nov. 17, 2022) (citing *Pearson v. Comm'r of Soc. Sec.*, 849 F. App'x 684, 690 (3d Cir. 2020)). Accordingly, the Court does not give credence to the VE's answer to Judge Moore's additional hypothetical; it has no bearing on her ultimate decision.

Judge Moore prodded the VE to determine whether Jeffrey's old jobs might provide

transferrable skills that Jeffrey could use at other jobs, and the VE repeatedly said that there were no transferrable skills, because the job was "pretty narrowly defined." (*See* AR at 51–52.) Although Jeffrey interprets this line of questioning as an attempt to "corner" the VE, this discussion about transferrable skills is relevant only to a Step Five determination, which Judge Moore ultimately did not need to reach. *See* SSR 82-41 ("Transferability of skills is an issue only when an individual's impairment(s), though severe, does not meet or equal the criteria in the Listing of Impairments [at Step Three] . . . but does prevent the performance of past relevant work [at Step Four].") Here, Judge Moore determined that Jeffrey was not disabled at Step Four, thereby ending the inquiry. Had she found that Jeffrey could not return to his old job, she would have then needed to analyze his impairments at Step Five, and account for the VE's testimony as to the transferability of Jeffrey's skills. *See* 20 C.F.R. § 404.1520(a)(4)(v) ("At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work."). As with the additional hypotheticals discussed above, Judge Moore did not rely on the testimony elicited regarding transferability of skills or jobs in the national economy.

Ultimately, Judge Moore's finding of non-disability was supported by substantial evidence. Plaintiff's contentions on appeal do not convince the Court otherwise. Accordingly, the Commissioner's decision is **AFFIRMED**.

## CONCLUSION

Having reviewed the record as a whole, the Commissioner's decision is **AFFIRMED.** An appropriate Order follows.

                                                                                             _____
                                                                                             **ROBERT KIRSCH**
                                                                                             **UNITED STATES DISTRICT JUDGE**

<u>Dated</u>: March 5, 2025